# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LEE TODD and ANGELA TODD,      )
                                     )
          Plaintiffs,        )
                                     )
          v.                 )        1:25cv388
                                     )
LEE COUNTY SHERIFF'S OFFICE, et al., )
                                     )
          Defendants.        )

## <u>MEMORANDUM OPINION, ORDER, AND RECOMMENDATION<br>OF UNITED STATES MAGISTRATE JUDGE</u>

This matter comes before the undersigned United States Magistrate Judge on the Applications to Proceed in District Court Without Prepaying Fees or Costs (Docket Entries 1, 7) (the "Applications") filed by Lee Todd and Angela Todd (collectively, the "Plaintiffs") in conjunction with their pro se complaint (Docket Entry 2) (the "Complaint"), which they subsequently amended (Docket Entry 8) (the "Amended Complaint"), against the Lee County Sheriff's Office, Sheriff Brian Estes, Detective Megan Rosser, Internal Affairs Captain Steve Freeman, and two "John Doe" officers (collectively, the "Defendants") (see id. at 2-3, 8).[1] The undersigned will grant the Applications for the limited purpose of recommending dismissal of this action.

---

     1 Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

<u>**APPLICABLE LEGAL PRINCIPLES**</u>

"The federal *in forma pauperis* statute, first enacted in 1892 [and now codified at 28 U.S.C. § 1915], is intended to guarantee that no citizen shall be denied access to the courts solely because his poverty makes it impossible for him to pay or secure the costs." <u>Nasim v. Warden, Md. House of Corr.</u>, 64 F.3d 951, 953 (4th Cir. 1995) (en banc) (internal quotation marks omitted). "Dispensing with filing fees, however, [i]s not without its problems. . . . In particular, litigants suing in forma pauperis d[o] not need to balance the prospects of successfully obtaining relief against the administrative costs of bringing suit." <u>Nagy v. FMC Butner</u>, 376 F.3d 252, 255 (4th Cir. 2004). To address this concern, the in forma pauperis statute provides that "the [C]ourt shall dismiss the case at any time if the [C]ourt determines that . . . the action," inter alia, "fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

A complaint "fails to state a claim on which relief may be granted," <u>id.</u>, when it does not "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face,'" <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)). This standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." <u>Id.</u> In other words, "the tenet that a court must accept as true all of the

2

allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id.

In conducting this analysis, a pro se complaint must "be liberally construed" and "held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal quotation marks omitted). Nevertheless, the Court "will not accept legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments." United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 455 (4th Cir. 2013) (internal quotation marks omitted); see also Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (explaining that the United States Court of Appeals for the Fourth Circuit has "not read *Erickson* to undermine *Twombly*'s requirement that a pleading contain more than labels and conclusions" (internal quotation marks omitted)). The Court also "put[s] aside any naked assertions devoid of further factual enhancement." SD3, LLC v. Black & Decker (U.S.) Inc., 801 F.3d 412, 422 (4th Cir. 2015), as amended on reh'g in part (Oct. 29, 2015) (internal quotation marks omitted). "At bottom, determining whether a complaint states . . . a plausible claim for relief . . . will 'be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" Francis v.

3

<u>Giacomelli</u>, 588 F.3d 186, 193 (4th Cir. 2009) (quoting <u>Iqbal</u>, 556 U.S. at 679).

**<u>BACKGROUND</u>**

This matter arises from a child abuse investigation regarding Plaintiffs' service as foster parents in 2021. (<u>See generally</u> Docket Entry 8.) Shortly after Plaintiffs filed the Complaint, the Court (per the undersigned) ordered "Plaintiffs to file . . . an amended complaint that sets forth sufficient factual matter to support any claims asserted by Plaintiffs and that omits invalid claims" (Text Order dated June 5, 2025); in doing so, that Text Order

> observes that, in [the] Complaint, Plaintiffs assert[ed] a variety of claims against a variety of Defendants under the umbrella of 42 U.S.C. § 1983 (and, as to some claims, under 42 U.S.C. § 1985); however, [the] Complaint lacks sufficient factual matter to support any claim against any Defendant. Most notably, [the] Complaint relies on conclusory allegations to support its purported claims. For example, Claim 1 in [the] Complaint asserts a claim for unlawful arrest, but supports that claim with only bald assertions, such as that Plaintiffs' May 17, 2022 "arrest was made without proper cause or legal justification," while acknowledging that it arose from a "prior [child protective services] complaint . . . involving allegations of imminent danger," which they try to discount by labeling as "outdated" (even though it evidently arose only "8 months earlier"). In similarly faulty fashion, [the] Complaint attempts to pin liability for Claim 1 on (A) Defendant Lee County Sheriff Brian Estes based on the undeveloped allegation that he "fail[ed] to scrutinize the legality of the arrest," (B) Defendant Megan Rosser for "act[ing] on outdated and insufficient evidence" without alleging any facts to show why the evidence was outdated or insufficient, and (C) Defendant John Does for executing the arrests "without proper cause or legal justification" without any supporting facts. Even more improvidently, [the]

4

Complaint apparently attempts to assign liability for Claim 1 to Defendant Internal Affairs Captain Steve Freeman not for any act precipitating the arrest, but for alleged failure to impose subsequent discipline. Claims 2, 3, and 4 in [the] Complaint, in turn, rely on mere, conclusory statements that (A) Plaintiffs' arrest involved "excessive force" and "sexual misconduct," (B) Defendant Rosser conspired with a judge "to hold a false court hearing outside of Lee County," and (C) Defendant Rosser conspired with a state prosecutor "to hold a false court hearing outside of Lee County," respectively. Plaintiffs' attempt to extend liability for Claims 3 and 4 to Defendants other than Defendant Rosser also lacks any tenable foundation. The last claim in [the] Complaint, Claim 5, seemingly attempts to assert a negligence-based claim against Defendant Freeman for failing to properly investigate Plaintiffs' arrest after the fact; however, Section 1983 does not provide a mechanism for negligence claims and Plaintiffs possess no federal constitutional right to such an investigation. Other legal defects also appear on the face of [the] Complaint, including its purported reliance on federal criminal statutes to establish civil liability and the lack of connection between its sparse factual allegations and the specific limitations of the conspiracies prohibited by Section 1985. Rather than recommend dismissal of this action due to the foregoing pleading failures under 28 U.S.C. § 1915(e)(2)(B)(ii), the Court will permit Plaintiffs an opportunity to file an amended pleading that addresses these matters and presents valid claims. Failure by Plaintiffs to comply with that aspect of this Text Order shall result in the dismissal of this action.

(Id. (ellipsis and certain brackets in original).)

The following day, the undersigned recommended that the Court deny Plaintiffs' petition for injunctive relief (see Text Recommendation dated June 6, 2025), filed simultaneously with their Complaint (see Docket Entries dated May 16, 2025), explaining, inter alia, that "[the] Petition seeks an unduly broad and vague injunction prohibiting 'intimidating and harassing conduct' and

5

requiring "implem[entation of] policies and training to prevent further intimidation,' based on conclusory allegations about conduct separate and apart from Plaintiffs' arrest on 05/17/2022 and any internal investigation (or lack thereof) regarding that arrest" (Text Recommendation dated June 6, 2025). Thereafter, Plaintiffs filed the Amended Complaint, again requesting broad and vague injunctive relief unrelated to their arrest and identifying a litany of federal criminal statutes among the asserted sources of federal jurisdiction. (See Docket Entry 8 at 4, 35.)

According to the Amended Complaint:

In March 2021, "Sampson County DSS CPS placed [three-year-old M.M.] in [Plaintiffs'] home in Lee County for foster care through [the] Children's Home Society of North Carolina's placement services." (Id. at 9.)[2] In April 2021, "Sampson County DSS CPS placed [M.M.'s] three older sisters," T.A., J.M., and D.A., into foster care with Plaintiffs. (Id. at 11.) On August 10, 2021, "Sampson County DSS CPS Social Worker Latoshia Johnson and Children's Home Society North Carolina Social Workers Shelly Savoy and Doris Taitague conducted a home visit to let Plaintiffs and [the] children know that they wanted to place the children back in Sampson County with their cousins" (id. at 17), one of whom, R.L.,

_____

2    For legibility reasons, this Opinion uses standardized capitalization and omits bold font, as well as the word "the" in front of "Plaintiff(s)" and "Defendants," in all quotations from Plaintiffs' materials.

6

"was released from jail for criminal obstruction" (id. at 18) and the other of whom "[is] a repeat drug trafficker" (id.). On August 11, 2021, Sampson County Juvenile Court "awarded [Plaintiffs] filed permanency for adoption" of the children. (Id.) Nevertheless, that evening "the children's five month long custodial Sampson County DSS Adoption Social Worker, Latoshia Johnson removed the children from [Plaintiffs'] home in Lee County in retaliation of [sic] the Sampson County Juvenile Judge's court orders without exigent circumstances and placed the[m with their cousins in] Sampson County NC." (Id.)

At a home visit on September 8, 2021, Johnson "coerc[ed] negative allegations" from the children, documenting the "children's false statements in her Sept[ember] 8, 2021 case log[] against Plaintiffs to reverse the Sampson County Juvenile Judges' [sic] Court Order to prevent them from returning to their court ordered parents after she removed them without a Sampson County Court order." (Id.) Then, violating "Plaintiffs' right to be investigated where they live" (id.), "Johnson filed her false complaint with Duplin County DSS CPS for investigation out of jurisdiction" (id.). The next day, "Duplin County DSS contacted Lee County DSS with an imminent danger report against Plaintiffs on behalf of Sampson County DSS CPS and Adoption Social Worker Latoshia Johnson concerning the children she had conducted a safe home visit for on Sept[ember] 8, 2021 in Sampson County." (Id.)

7

"Lee County DSS CPS Investigator Kris Lynn Driggers located Plaintiffs and searched their home to find no children were in imminent danger but read Plaintiffs' permanency orders that were filed in Sampson County Court [on] Aug[ust] 11, 2021." (Id.) On September 21, 2021, the same "Lee County DSS CPS Social Worker" returned "with an imminent danger report again from Duplin County DSS CPS and a document for a safety assessment that Lee County DSS CPS wanted Plaintiffs to sign even though there were no safety issues and no imminent danger but a need to make the Sampson County Juvenile Judges' Permanency Orders null and void." (Id. at 18-19.)

In October 2021, "Duplin County DSS CPS and Sampson County DSS Adoption Social Worker Latoshia Johnson and [R.L.] took the three older children" for "forensics interviews without a court order." (Id. at 19.) However, "[t]he Child Medical Exam was missing from their entire record making the investigation incomplete without a case determination of child abuse neglect and dependency against Plaintiffs in violation of Plaintiffs' Fourth Amendment Rights." (Id.) In November 2021, "Duplin County DSS CPS Social Worker Jennifer Blum and Sampson County DSS Adoption Social Worker Latoshia Johnson and [R.L.]" took M.M. "to Dr. Danielle Thomas Taylor to have a Child Medical Examiner" examine M.M. "to search for evidence without a court order and without notifying Plaintiffs who were established as permanent parents on that date for consent." (Id.) "Doctor Danielle Thomas Taylor never made a case

8

determination of child abuse, neglect and dependency against Plaintiffs." (Id.)

Nonetheless:

> [In December 2021,] Duplin County DSS CPS used false, incomplete Child Advocacy Forensics Interviews as evidence without child medical exams for the older three children and the Child Medical Exam and Forensics interviews of the youngest child to file a false Responsible Individuals List [(the "RIL")] in the NC Court against Plaintiff Angela Todd and her Fourth Amendment rights with intent to reverse the Sampson County Court Judges permanency orders filed [on] Aug[ust] 11, 2021. Plaintiffs both filed Petitions in Duplin County Court to prevent deprivation of rights until the matter was resolved.

(Id.)

After "Duplin County" requested continuances in January and February 2022 (id.), "Duplin County Court" conducted a hearing on March 14, 2022, during which hearing "Plaintiff Lee Todd's petition was dismissed and Duplin County DSS CPS documented with the court order to dismiss that they never accused Plaintiff Lee Todd" (id. at 20; see also id. ("Mar[ch] 14, 2022 Angela [sic] no evidence so Duplin [sic] contacted Lee County for evidence.")). On March 15, 2022, Lee County Sheriff's Detective "Rosser called Plaintiffs to check on the children in foster care to find out that they had not resided in Lee County since foster care ended normally [on] Aug[ust] 11, 2021." (Id.) "Plaintiffs[] told Detective Rosser they had a lawyer hired to work on a case out of county concerning the matter and gave her [contact information for their attorney]." (Id.)

9

Nevertheless, on May 16, 2022, Detective Rosser and the Lee County Sheriff's Office obtained arrest warrants for Plaintiffs "for child abuse" of the children based on "Duplin County DSS CPS' Sept[ember] 9, 2021 imminent danger report." (Id. at 10; see also id. at 20.)[3] They "ordered [the] arrest warrants from the magistrate . . . without probable cause to believe children were in imminent danger using publicly disseminated Child Medical Examination and Forensics interviews without a court order and procedure that were illegally obtained in violation of Plaintiffs' and [the] children's constitutional rights to be free from unlawful search and seizure." (Id. at 20.) Moreover, the "Lee County Sheriff's Office applied for arrest warrants for Duplin County DSS CPS' Sept[ember] 9, 2021 imminent danger report . . . for child abuse [of the children] . . . without investigating Sampson County

---

3  Per Plaintiffs:

[The] Lee County Sheriff's Office and its personnel, namely Sheriff Brian Estes, Detective Megan Rosser, Officers John Doe 1 and Jon [sic] Doe 2 arrested [P]laintiffs at their home . . . in response to Duplin County DSS CPS' imminent danger report made to the Lee County Sheriff's Office on or around March 15, 2022 to collect evidence to present in Duplin County Court for unconstitutionally filing RIL cases out of jurisdiction against Plaintiffs using false investigative assessments which never made a case determination of child abuse, neglect and dependency against Plaintiffs. Duplin County DSS CPS' efforts were to place Plaintiffs on the RIL to assist Sampson County DSS CPS with reversing Sampson County Juvenile Court Judges' Permanency Orders for the children to return to Plaintiffs.

(Id. at 20.)

DSS CPS and Children's Home Society of North Carolina's home visit case logs for the children they placed in [Plaintiffs'] home" (id. at 12), "undermining the legal process of a proper investigation prior to accusations and determining probable cause" (id.). (See id. at 12-17.) Thus, Plaintiffs' arrest on May 17, 2022 (see id. at 30-31) "was conducted without probable cause, proper warrants, or exigent circumstances" (id. at 24). (See, e.g., id. at 26 (alleging that (i) "[p]rior to any investigation or judicial order, Detective Rosser arrested [P]laintiff [sic] based on evidence obtained from Duplin County, in violation of the Fourth Amendment's requirements for warrants and jurisdiction," (ii) Detective Rosser "procured evidence from outside Lee County without judicial oversight and used it to establish probable cause, in violation of constitutional protections against illegal searches and seizures," and (iii) "[d]uring the arrest, Detective Rosser did not possess a valid warrant, lacked probable cause for exigent circumstances, and used excessive force, including assault, which caused physical harm and false imprisonment").)[4]

---

[4] This conduct underlies Plaintiffs' claims against the Lee County Sheriff's Office and Sheriff Estes. (See, e.g., id. at 21 (asserting that "the Sheriff's Office's policies, practices, and customs facilitated and condoned the conduct of Detective Megan Rosser in executing an arrest and search without proper warrants, probable cause, or exigent circumstances, and in obtaining evidence in violation of Plaintiff's [sic] Fourth Amendment rights"), 22 (alleging that Lee County Sheriff's Office (i), "through Detective Megan Rosser, arrested Plaintiff [sic] without a warrant, probable cause, or exigent circumstances, and without completing necessary background checks prior to arrest," (ii) "permitted or failed to

11

For their part, the John Doe Officers "participated in the arrest and detention of [P]laintiff Lee Todd without a valid warrant, probable cause, exigent circumstances, or judicial authorization, in violation of the Fourth Amendment's protections against unreasonable searches and seizures."  (Id. at 28; accord id. at 27.)  Moreover, "Officer John Doe 1 personally participated in the arrest of Plaintiff Lee Todd by physically removing him from his home, handcuffing him, and detaining him without proper legal justification.  [Officer John Doe 1's] actions directly caused the deprivation of [P]laintiff's [sic] liberty and the unlawful detention, constituting a violation of constitutional rights after Duplin County dismissed him from all allegations March

_____

prevent Detective Rosser from acquiring evidence from Duplin County that was obtained in violation of Plaintiff's [sic] Fourth Amendment rights, and used such evidence as probable cause for arrest and other investigative actions," and (iii) "forcibly entered Plaintiff's [sic] residence without proper warrants, and used excessive force during the arrest," as well as that "[t]he Sheriff's Office's policies and customs enabled Detective Rosser to omit officers involved from official reports, and allowed her to remove Plaintiff [sic] from their home without proper documentation or legal justification"); see also id. at 22-24 (presenting similar allegations regarding Sheriff Estes, including that (i) he "knowingly and intentionally deprived [P]laintiffs of their Fourth Amendment rights by authorizing, facilitating, and failing to prevent the unlawful search, seizure, and arrest of [P]laintiff [sic] without probable cause, valid warrants, and exigent circumstances," (ii) "authorized or failed to prevent Detective Rosser from acquiring evidence outside of [sic] jurisdiction and in violation of the Fourth Amendment," (iii) "failed to ensure that proper warrants were obtained before entry and searches, resulting in violations of the Fourth Amendment rights," and (iv) "knew or should have known about the risks of unlawful searches and arrests by officers under his command and failed to take corrective measures").)

14, 2022." (Id. at 27.) The John Doe Officers and Detective Rosser also failed to intervene to prevent the other officers' improper conduct during the arrest and, respectively, failed to complete and improperly omitted information from an arrest report. (See id. at 25-29.)

At some unspecified point thereafter, Plaintiffs lodged an "official complaint to the Lee County Sheriff Office Internal Affairs" regarding "Detective Megan Rosser and two unknown officers' criminal misconduct on May 17, 2022 during Plaintiffs' arrest." (Id. at 30.) "In January 2025 Lee County Sheriff Captain Steve Freeman conducted an investigation" regarding this complaint, during which he met with Plaintiffs and "stated that he would check the body cameras of three officers for th[e arrest] date from 12pm to 4pm." (Id.) "Captain Freeman observed Detective Megan Rosser's Axon Body Camera which showed nudity of Plaintiff Angela Todd in her master suite bathroom" during the arrest. (Id.) As such, "Captain Freeman observed instances of video voyeurism involving Detective Rosser and the John Doe officers but failed to report these violations to federal authorities, thus allowing unlawful conduct to continue unreported and unaddressed at the federal level." (Id.) "Failure to uphold the duty of care and to report known sexual misconduct violated federal statutes concerning obstruction of justice and conspiracy evidenced by Captain Freeman actively concealing criminal activity." (Id. at 31.) "Such

13

neglect to report misconduct violates departmental policies and also constitutes a breach of legal duties under federal law, because the misconduct involves violations of civil rights and federal statutes." (Id.)

"Specifically, [Captain Freeman] is accused of publicly releasing body camera evidence related to Plaintiffs [sic] arrest without proper authorization, which compromised the integrity of the investigation and violated Plaintiffs [sic] privacy rights." (Id.) Further, "Captain Freeman's knowledge of the illegal warrantless entry into Plaintiffs' residence, including the master suite, and the illegal recording of nudity, rendered the arrest and detention of Plaintiff Angela Todd unconstitutional under the Fourth Amendment." (Id. at 32.) "There were no exigent circumstances or valid warrants to justify entry or the seizure of private activities, constituting a violation of rights to privacy and protection against unreasonable searches and seizures." (Id.) Additionally, "Captain Freeman unlawfully released or edited body camera footage that captured private activities, including nudity, without proper authorization, violating Plaintiffs' privacy rights and statutes regulating evidence handling (including 18 U.S.C. § 1519 regarding evidence tampering). Such dissemination compromised privacy rights and the integrity of the investigation." (Id.) "Plaintiff Angela Todd's complaints against law enforcement misconduct, including her exercise of her First Amendment rights,

14

prompted Captain Freeman's retaliatory actions, including concealment of evidence and possible malicious targeting, violating her First Amendment rights." (Id.)

Plaintiffs thus pursue claims against Defendants in their individual and official capacities under 42 U.S.C. § 1983 for violation of Plaintiffs' rights under the First, Fourth, and Fourteenth Amendments. (See id. at 1-35.)[5] They also purport to pursue claims for violation of various criminal statutes against at least some Defendants. (See, e.g., id. at 33.) As relief for these alleged wrongs, the Amended Complaint seeks $75 million in damages, as well as a "[d]eclar[ation] that the Lee County Sheriff's Office's policies and practices violated Plaintiffs' constitutional rights." (Id. at 35.) It also seeks "[a] long-term order to prevent future harm due to threats and intimidation by officers driving by home [sic] pulling in the driveway, breaking and entering other properties owned by Plaintiffs; [sic] family while searching for evidence." (Id. (stray space removed).) The

---

5    Although the Amended Complaint initially asserts that "Plaintiffs allege that their United States Constitutional rights were violated by Defendants under the First, Fourth, Fifth, Eighth and Fourteenth Amendments" (id. at 7), the Amended Complaint contains no allegations regarding the Fifth and Eighth Amendments (see id. at 1-35). Further, the Fourth Amendment rather than the Eighth Amendment applies to any claims regarding Plaintiffs' arrests. See, e.g., Graham v. Connor, 490 U.S. 386, 395 (1989) ("hold[ing] that *all* claims that law enforcement officers have used excessive force — deadly or not — in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment" (emphasis in original)).

15

Amended Complaint further asks the Court to "[e]njoin the Department from future violations" and to award, inter alia, "attorneys' fees," notwithstanding Plaintiffs' pro se status. (Id.)

## DISCUSSION

"Section 1983 authorizes a plaintiff to sue for an alleged deprivation of a federal constitutional right by an official acting under color of state law." Williamson v. Stirling, 912 F.3d 154, 171 (4th Cir. 2018) (internal quotation marks omitted). "To establish personal liability under § 1983, however, the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights. That is, the official's own individual actions must have violated the Constitution." Id. (brackets, citation, and internal quotation marks omitted). "Importantly, mere knowledge of such a deprivation does not suffice." Id.

In turn, official-capacity liability attaches only if "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." Collins v. City of Harker Heights, 503 U.S. 115, 121 (1992) (internal quotation marks omitted). In that regard,

> [governmental] policy may be found in written ordinances and regulations, in certain affirmative decisions of individual policymaking officials, or in certain omissions on the part of policymaking officials that

16

> manifest deliberate indifference to the rights of citizens. Outside of such formal decisionmaking channels, a [governmental] custom may arise if a practice is so "persistent and widespread" and "so permanent and well settled as to constitute a 'custom or usage' with the force of law."

Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999) (citations omitted), abrogated on other grounds by Wilkins v. Gaddy, 559 U.S. 34 (2010) (per curiam). However, "an official's discretionary acts, exercised in carrying out official duties, do not necessarily represent official policy." Perdue v. Harrison, No. 1:17cv403, 2017 WL 4804363, at *2 (M.D.N.C. Oct. 24, 2017). "Rather, the official must have 'final authority' over government policy with respect to the action in question to trigger official capacity liability." Id. (certain internal quotation marks omitted). Moreover, "[o]fficial liability under § 1983 may *not* be premised on a respondeat superior or other vicarious liability theory." Gantt v. Whitaker, 203 F. Supp. 2d 503, 509 (M.D.N.C. 2002) (emphasis in original), aff'd, 57 F. App'x 141 (4th Cir. 2003).

As an initial matter, Plaintiffs cannot proceed on their claims against the Lee County Sheriff's Office. "State law dictates whether a [state] governmental agency has the capacity to be sued in federal court." Efird v. Riley, 342 F. Supp. 2d 413, 419-20 (M.D.N.C. 2004); see also Avery v. County of Burke, 660 F.2d 111, 113-14 (4th Cir. 1981) ("The capacity of a governmental body to be sued in the federal courts is governed by the law of the state in which the district court is held."). "There is no North

17

Carolina statute authorizing suit against a county's sheriff's department." Efird, 342 F. Supp. 2d at 420. "Accordingly, the [Lee County] Sheriff's Office is not a legal entity subject to suit under the law of North Carolina." Alley v. Yadkin Cnty. Sheriff Dep't, No. 1:16cv100, 2017 WL 5635946, at *2 (M.D.N.C. Jan. 27, 2017) (internal quotation marks omitted). Plaintiffs therefore "fail[] to state a cognizable legal claim" against the Lee County Sheriff's Office. Id. (granting sheriff department's "motion to dismiss for failure to state a legally cognizable claim upon which relief may be granted").

The Amended Complaint also lacks factual allegations to support its conclusory assertions of wrongdoing by Sheriff Estes and the Lee County Sheriff's Office, further warranting dismissal of such claims. See, e.g., Iqbal, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Moreover, Plaintiffs' claims against these two Defendants rest primarily upon the alleged improper conduct of various Lee County Sheriff's Office employees. (See Docket Entry 8 at 21-24.) Such vicarious liability theories cannot sustain a Section 1983 claim. See Williamson, 912 F.3d at 171; Gantt, 203 F. Supp. 2d at 509. In addition, as the Court has already explained to Plaintiffs, "Section 1983 does not provide a mechanism for negligence claims" (Text Order dated June 5, 2025), necessitating dismissal of Plaintiffs' claims insofar as they rest

18

on the alleged negligence of Sheriff Estes (<u>see</u> Docket Entry 8 at 23) and/or Captain Freeman (<u>see</u> <u>id.</u> at 34).

The Amended Complaint further lacks factual allegations to support its conclusory assertions that Defendants' alleged wrongdoing occurred pursuant to Lee County Sheriff's Office policies or customs (<u>see generally</u> Docket Entry 8), precluding any official-capacity claims, <u>see</u> <u>Collins</u>, 503 U.S. at 121-22; <u>see also</u> <u>Iqbal</u>, 556 U.S. at 678; <u>SD3</u>, 801 F.3d at 422. Relatedly, the Amended Complaint asserts that Captain Freeman acted contrary to "departmental policies" (Docket Entry 8 at 31; <u>accord</u> <u>id.</u> at 32), forestalling any official-capacity claim for such conduct. <u>See, e.g.</u>, <u>Wong v. Guilford Cnty. Sheriff Dep't</u>, No. 1:23cv223, 2024 WL 85548, at *10 (M.D.N.C. Jan. 8, 2024) (explaining that "an officer's alleged failure to follow official policy, without more, does not create official-capacity liability for the officer's organization" (citation omitted)), <u>recommendation adopted</u>, No. 1:23cv223, 2024 WL 5372414 (M.D.N.C. Jan. 30, 2024).

The Amended Complaint also lacks factual allegations to support the bare assertions that various Defendants engaged in excessive force, retaliated against Plaintiffs, violated their due process rights, or acted outside the bounds of their lawful authority (<u>see generally</u> Docket Entry 8), precluding such claims, <u>see, e.g.</u>, <u>Iqbal</u>, 556 U.S. at 678-79. Moreover, any post-arrest developments, such as the purported failures to properly complete

19

post-arrest reports and Captain Freeman's alleged discovery of improprieties during his review of the body camera footage from the arrest, cannot sustain Plaintiffs' fourth-amendment claims, as they did not <u>cause</u> the allegedly improper arrests. <u>See, e.g.</u>, <u>Wong</u>, 2024 WL 85548, at *8 (explaining that, "because the commanders' post-incident determinations regarding the propriety of the deputies' actions in arresting [a plaintiff] did not <u>cause</u> the allegedly unlawful arrest, [the p]laintiffs lack a viable Section 1983 claim against those officials" (emphasis in original)); <u>see also Williamson</u>, 912 F.3d at 171 (explaining that "mere knowledge of . . . a deprivation [of rights] does not suffice [to establish liability]").

Nor do Plaintiffs' allegations regarding the arrest suffice. Liberally construed, the Amended Complaint faults (i) Detective Rosser for obtaining arrest warrants based on information from the Child Protective Services' child abuse investigation(s), without first pursuing certain additional investigative avenues, and (ii) the John Doe Officers for participating in Plaintiffs' resulting arrests, notwithstanding the prior dismissal of Plaintiff Lee Todd's petition against the Duplin DSS CPS. (<u>See</u> Docket Entry 8 at 25-29.) "[T]he Fourth Amendment protects '[t]he right of the people to be secure in their persons,' prohibits 'unreasonable searches and seizures', and requires that warrants may only be issued 'upon probable cause.' The crux of the Fourth Amendment is

20

that it 'prohibits government officials from detaining a person in the absence of probable cause.'" <u>Chaplin v. McFadden</u>, No. 1:23cv423, 2025 WL 968956, at *27 (M.D.N.C. Mar. 31, 2025) (citation omitted) (certain brackets in original). Accordingly, "[o]nly where [a] warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable" will liability attach for "an officer whose request for a warrant allegedly caused an unconstitutional arrest." <u>Malley v. Briggs</u>, 475 U.S. 335, 344-45 (1986); <u>see also</u> <u>id.</u> at 345 ("The [relevant] question . . . is whether a reasonably well-trained officer in [the defendant's] position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant.").

The factual allegations in the Amended Complaint fall short of this standard. The Amended Complaint classifies certain evidence as "false" (Docket Entry 8 at 19; <u>accord</u> <u>id.</u> at 18) and assert that CPS officials acted improperly in obtaining certain interviews and examinations of the children "without a case determination of child abuse neglect and dependency against Plaintiffs" (<u>id.</u> at 19; <u>see</u> <u>id.</u> at 18-20). Even accepting these conclusory assertions, however, the Amended Complaint provides no grounds for inferring that Detective Rosser knew of the purported deficiencies or that the "publicly disseminated Child Medical Examination and Forensics interviews" did not support a finding of probable cause to believe

21

that Plaintiffs engaged in child abuse. (<u>Id.</u> at 20.)[6] Moreover, "[t]he Fourth Amendment . . . does not require investigators to exhaust every potential avenue of investigation before seeking and obtaining a warrant." <u>United States v. McNeal</u>, 818 F.3d 141, 151 (4th Cir. 2016); <u>see also</u> <u>McKinney v. Richland Cnty. Sheriff's Dep't</u>, 431 F.3d 415, 418-19 (4th Cir. 2005) ("The fact that [the defendant-officer] did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause established by the victim's identification. . . . At most, the[ identified investigatory] omissions amounted to a failure to pursue potentially exculpatory leads, and such does not negate probable cause."), <u>abrogated in nonrelevant part by</u> <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009). Accordingly, the Amended Complaint fails to state a viable claim against Detective Rosser for obtaining the arrest warrants.

As for the arresting officers, "[w]here the alleged Fourth Amendment violation involves a search or seizure pursuant to a warrant, the fact that a neutral magistrate has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner." <u>Chaplin</u>, 2025 WL 968956, at *28 (internal quotation marks omitted). Thus, "an officer who executes a

---

6  In this regard, the alleged lack of "probable cause to believe children were in imminent danger" (<u>id.</u>) neither undermines the existence of probable cause to believe Plaintiffs engaged in child abuse nor precludes issuance of arrest warrants.

22

facially valid warrant without knowledge of the warrant's infirmities does not violate the Fourth Amendment." Id. The Amended Complaint lacks any indication that the arresting officers possessed knowledge of either the alleged infirmities in the CPS investigation(s) or the grounds upon which the Duplin County Court dismissed Plaintiff Lee Todd's petition. (See generally Docket Entry 8.) The Amended Complaint also identifies no deficiencies in the arrest warrants themselves. (See id.) Accordingly, the Amended Complaint fails to state a viable claim based on Plaintiffs' arrest pursuant to those warrants.

The Amended Complaint contends, however, that officers engaged in "[v]ideo voyeurism," in violation of "18 U.S.C. § 1801," because "Detective Megan Rosser's Axon Body Camera . . . showed nudity of Plaintiff Angela Todd in her master suite bathroom" during her arrest. (Docket Entry 8 at 30.) It further asserts that Captain Freeman committed various crimes by not reporting this alleged voyeurism after reviewing the camera footage. (See, e.g., id. at 30-32; see also id. at 4 (identifying more than ten criminal statutes as "at issue in this case").) As an initial matter, the Amended Complaint does "not allege[] any facts to establish that the[ identified] criminal statutes create a private cause of action, and the Supreme Court historically has been loath to infer a private right of action from a bare criminal statute, because criminal statutes are usually couched in terms that afford

23

protection to the general public instead of a discrete, well-defined group." Dingle v. McGee, No. CV 2:23-5333, 2024 WL 5378986, at *7 (D.S.C. May 31, 2024) (brackets and internal quotation marks omitted), recommendation adopted, Civ. Action No. CV 2:23-5333, 2025 WL 96472 (D.S.C. Jan. 14, 2025), aff'd, No. 25-1133, 2025 WL 1513617 (4th Cir. May 28, 2025), cert. denied, 146 S. Ct. 823 (2025). "Where, as here, a criminal statute bears no indication that civil enforcement of any kind was available to anyone, a civil complaint alleging violations of such statutes cannot be sustained as a matter of law," id. (internal quotation marks omitted). See 18 U.S.C. § 1801. Moreover, by its plain language, Section 1801 appears inapplicable to this incident, see 18 U.S.C. § 1801(c) ("This section does not prohibit any lawful law enforcement, correctional, or intelligence activity."); see also 18 U.S.C. § 1801(a) (applying only to those who "ha[ve] the intent to capture an image of a private area of an individual without their consent, and knowingly do[] so under circumstances in which the individual has a reasonable expectation of privacy" (emphasis added)), further undermining Plaintiffs' claims against Captain Freeman.

Accordingly, the Amended Complaint fails to state a viable claim against Defendants. It also seeks improper relief. To begin, the Amended Complaint contains no factual allegations to support its request for a "[p]ermanent [r]estraining [o]rder . . .

24

to prevent future harm due to threats and intimidation by officers driving by home [sic] pulling in the driveway, breaking and entering other properties owned by Plaintiffs; [sic] family while searching for evidence" (Docket Entry 8 at 35). (See id. at 1-35.) Separately, despite the requirement that all injunctions "state [their] terms specifically," Fed. R. Civ. P. 65(d)(1)(B), and "describe in reasonable detail . . . the act or acts restrained or required," Fed. R. Civ. P. 65(d)(1)(C), the Amended Complaint asks for a broad and vague injunction against the Lee County Sheriff's Office precluding unspecified "future violations" (Docket Entry 8 at 35).

In addition, the Amended Complaint seeks a "[d]eclar[ation] that the Lee County Sheriff's Office's policies and practices violated Plaintiffs' constitutional rights." (Id.) Yet "it [is] clear that [Plaintiffs] cannot seek a declaration just because [they] want[] vindication for what happened to [them]." Wells v. Johnson, 150 F.4th 289, 303 (4th Cir. 2025); see also id. ("It is not enough that a plaintiff wishes to have the moral satisfaction of a judicial ruling that he was right and his adversary was wrong; the relief sought must have legal effect in determining the present and future rights and obligations of the parties." (internal quotation marks omitted)). Instead, to seek a declaratory judgment in federal court, "[P]laintiff[s] must show both that future litigation is likely to happen (at least absent the declaration

25

sought) and that the declaration's preclusive effect will likely help [them] in that litigation." Id. at 302. Because the Amended Complaint makes no such showing (see Docket Entry 8 at 1-35), Plaintiffs cannot proceed on their declaratory judgment request, see Wells, 150 F.4th at 307.

For all of these reasons, the Court should dismiss the Amended Complaint.

**CONCLUSION**

Plaintiffs' claims fail as a matter of law, warranting dismissal under Section 1915(e)(2)(B)(ii).

**IT IS THEREFORE ORDERED** that Plaintiffs' Applications (Docket Entries 1, 7) are **GRANTED** for the limited purpose of considering this recommendation of dismissal.

**IT IS RECOMMENDED** that the Court dismiss this action pursuant to Section 1915(e)(2)(B)(ii).

This 16th day of April, 2026.

/s/ L. Patrick Auld
L. Patrick Auld
United States Magistrate Judge

26
